Arguments not to exceed 15 minutes per side, Mr. Drain for the opponent. Good morning, your honors. Michael Drain for Appellant Tony Horn. At this time I'd like to reserve five minutes for rebuttal. Very well. So to address the Appellant's argument to the McDonnell-Douglas process, we submit that Ms. Horn presented a prima facie case of gender discrimination. She had the most seniority. She had more work-related experience and other applicants. She served more time in the assignments of foreman one and assistant superintendent than any of the others. Education and training were equal or better than the others and no attendance issues. Now, Ms. Horn was hired into the Division of Waste 26 or so years. Seniority is one factor, as are all of the other factors you mentioned. But with the males who were hired, did any of them have similar infractions to Ms. Horn? I know that some of the males who were promoted had infractions, but were their infractions similar in degree or type to those that Ms. Horn had? Well, I'd have to say that they were perhaps more severe. So there's a lot of emphasis put on this December 5, 2011 incident where she went off the clock and collected garbage after work hours and she got a one-day suspension. But the males who were promoted, one male, got a two-day suspension. So on its face, I would say that's a more severe disciplinary infraction. In terms of number of days, but was his off the clock or some type of cover-up? Well, it was a cover-up that he was helping somebody move furniture into their house while he's getting paid by the city of Cleveland. So use your judgment as to whether that's more severe. And he got a two-day suspension for it. The other guy, Mr. Mason, had attendance issues and checking in and so forth. So there's a lot of emphasis put on this December 5 incident being off the clock, and we're going to use that to differentiate her from other people that we're going to promote. But the big picture is that she had more seniority. She had more education and training. She was actually working in the position for which she bid on, namely the so-called foreman one position. And understand that there are 19 management positions in her division. There are a number of different stations. There are three foremen at each station, and there's one foreman, so-called one foreman one, dash Roman number one. So she was... One reason they gave was a lack of interest, because they said that she was promoted to a foreman one position at the Ridge Road facility, and that after she served in that management position for a time, she requested a transfer back to her old position, which was a foreman of the waste collection. And that showed that she didn't have an interest in going up the What's wrong with that non-discriminatory reason? The city construed it that way, but if you look at the current... Aren't they allowed to? I mean, we're talking about a management position as opposed to a non-management position, and our decisions normally give a little more discretion, a little more deference to an employer when they fill management positions. And why shouldn't we give a little more deference as to their reason as to this shows a lack of interest? Because in fact, she didn't show a lack of interest. The context was that on April 17th, she wrote this one paragraph, a note that said, I want to be transferred back. But two days later, she wrote an explanatory letter as to why she had submitted that. And the explanatory letter said, I was in the position as acting foreman one, and while I'm on vacation, the city put somebody else in there who I supervised. Okay? So she didn't express a lack of interest. She expressed a lack of... expressed dismay, if you will. She resigned from that management position and asked for her old position back. Right? She resigned from the management position and asked for her old position back. Yeah, that's true because she wanted to stay on track for a permanent foreman one position. Why isn't that a legitimate reason not to give her this promotion? Well, go back to your question about lack of interest. What I'm arguing is that it doesn't demonstrate lack of interest. It shows trying to undercut her position for promotion. Okay? It wasn't a lack of interest. The city argues that it is, but in context of it, it wasn't. We're supposed to second guess that management position here? Not at all. Not at all. But, you know, you note that in the trial court, the trial court puts a lot of emphasis on the position of the now retired commissioner who was the decision maker and who decided not to promote appellant, but the trial court relied on subjective judgments and put a lot of emphasis on the so-called decision maker decision, but there are no affidavits. There's no support for that. So the trial court relied on subjective judgments. We believe that appellant submits that she has satisfied the prima facie requirement. She has rebutted the reasons that the city put forth for not promoting her, and that it's pretextual. We submit that the pretext is shown by the fact that the city has not promoted her. The disciplinary decisions or the disciplinary actions were more severe in her case than the other case. We don't believe that supervision reviewed her interest in the job, and we think that she was equally or more qualified than the other applicants, but also I want to emphasize that the trial court relied on Commissioner Owen's decision, but there's no support for the trial court's position there. There are no affidavits, no depositions, and it was imposing its own subjective judgment on the facts of the case. So at this time I would submit that we have satisfied the McDonnell-Douglas test. Very well. You'll have your rebuttal. Good morning. Good morning, Your Honors. It's a sincere honor to appear before you. These are difficult... You're Mr. Carson, I take it.  And Ms. Horne's history in a admittedly male-dominated profession is that after seven years in the job, she earned the distinction of being the first woman and still only woman to attain a management position in the Division of Waste. And I think that the law is pretty straightforward in this area, and I think its emphasis is on, because it's a difficult area, on the burdens placed upon not the courts, but counsel, to establish their cases. And this case I think is an example where there's been an absolute failure on the plaintiff's part to establish that there were legitimate, proffered reasons for not promoting her, specifically that the disciplinary incident demonstrated a specific lack of aptitude for the position. She missed a route, she showed an inability to read a route map, and then she attempted to cover it up by working her crew off the clock, putting the city at risk. It wasn't just that she worked off the clock, but she directed her crew to work off the clock and to do this route that they had missed earlier? Correct, and she was in a supervisory capacity at the time as their foreman.  Yes, and she was applying for a promotion to a foreman one position and an assistant superintendent position. The one gentleman who was promoted to foreman one above her, Mr. Mason, his discipline was definitely poor judgment. He used a city truck to move furniture while on the clock. It's a severe infraction, but in the opinion of management, it did not go to the aptitude to do the job as much as... I think it's also the supervisory infraction. One guy had an infraction for not wearing a seat belt, I know that, but the other ones were all individual infractions that this was instructing her crew to violate policy, which as a supervisor I think is much more serious than perhaps a supervisor doing something on her own. Well, did the supervisor move the furniture on his own or did he have his crew move it? That I don't know, Your Honor. I know that he was, I believe he was acting alone and he took the truck on his own and did not have his crew assist him in that infraction. So this route that was missed, was this when she was acting as, when she was filling in? As a foreman one? Yeah. I don't know. I know that she was, the only time she had ever served in foreman one was in an acting capacity and that's what she relinquished voluntarily, which showed... But this wasn't her regular route is my understanding. Is that correct or not? It was not her regular route. But in the opinion of the supervisor, it still showed a lack of aptitude because there was unchallenged testimony that each truck contained a route map and it was incumbent upon the supervisory personnel to be able to read the route map. She actually had the bad luck that her superior, the general superintendent of the division, Mr. Ludwig, lived in the neighborhood where the route was missed. And so it was a particularly bad situation for her. And she happened to have been on that truck or they came back in and they had missed it? She happened to have been on that truck. They missed the route. It came to her attention that the route had been missed and she went back to pick it up after hours without clearing that with her supervisors. I mean, to me, I don't know. I mean, I certainly think that you can equate that with the guy who took the truck and did... You can't equate that, Your Honor, but the issue is, is their reasoning that that's more severe infraction, is that a legitimate non-discriminatory reason? I think the simple answer to that question is yes. So then the burden shifts back to the plaintiff to show pretext. Now Mr. Drain mentioned Mr. Owens. Mr. Owens was the ultimate decision maker in this case whose deposition he didn't bother to take. So Mr. Ludwig, who was involved in the decision making process, it was his testimony that was taken at the arbitration of the union's grievance over the failure to promote and in this case. So I think that specifically, for example, with respect to her relinquishment of her position where Mr. Ludwig did not review her explanatory letter and the arbitrator found that a significant fact, presumably Mr. Owens had because the letter was addressed to Mr. Owens and Mr. Owens was the one who made the ultimate promotion decision. So again, in terms of the burden in this case, I don't think it was met by the appellant, but I think that what's very significant is that the relative qualifications of all the applicants, there was no evidence, and I thought I had established this at the arbitration as well, which Mr. Drain was not involved in, there was no evidence that these gentlemen who were promoted ahead of her had inferior qualifications. There was no evidence at all in regards to their relative qualifications to one another other than with respect to seniority, which was Ms. Horns was superior. That's a matter of record. There was a comparison of their past disciplinary record and the one other item was that, was the performance reviews of her superiors. She was the only one among all the candidates who had received negative performance reviews. So if you look at the relative qualifications of the candidates, clearly management's decision that they were more qualified for promotion than her was legitimate and rational. Now, as to pretext, then the burden shifts. Now, the negative review was based on this incident? The negative superior reviews? No, they were based on performance, overall performance. So, if the court accepts that the proper reasons for non-promotion were legitimate, then the plaintiff has the burden to show pretext, and to demonstrate that, they have to show that there is no basis in fact for these decisions. There were bases in fact for this decision, whether anyone here disagrees with them or not. Did they actually motivate the defendant's challenge conduct? Absolutely, because even the arbitrator wrote that the 10 contract criteria that management was required to factor into the promotion process were considered and applied. Was the conduct, and the third element is, was it... The arbitrator ultimately concluded that she should have gotten the promotion, right? The arbitrator ultimately concluded that the city violated the contract by not promoting her to Foreman 1, but it did not, in a leap of illogic, violate the contract in not promoting her to Assistant Superintendent. So, the only rationale I can think of that is that he, in comparing her disciplinary record with Mr. Mason, who was promoted to Foreman 1, Mr. Mason's was more severe. I mean, I feel very strongly that the arbitration is what the... Pardon? Yes. Anyway, the arbitrator construed the contract, and here the issue is whether she was discriminated based upon her sex in violation of the civil rights law and whether there's retaliation, right? I mean... Correct. Different issues. Yeah, and the... The arbitrator didn't resolve the sex discrimination. In fact, the arbitrator, right at the beginning, he specifically made the statement that he was reserving the federal claim. And then there's also a stipulation that the arbitrator's ruling are not collateral estoppel or res judicata in this case. Correct. I just want to make the point... So I think it's just confusing even to talk about the arbitration, since it has no effect on this, as far as I'm aware of, other than we use the evidence. I agree. I think the evidence is... I mean, there's stipulation we can use the evidence that was submitted in the arbitration to proceed. Yes, and I went very, very slowly and methodically with Ms. Horn and asked her how her qualifications were superior to the other gentleman's, and she flat out said she didn't know, that she could not articulate her own superior qualifications to that of the other gentleman. The union didn't establish, didn't meet their burden of proof because it was a contract violation case, and I respectfully submit that the plaintiff hasn't met that burden in this case. The retaliation claim is different in time, just so the court's clear. The retaliation claim is that after this failure to promote, her union grievances were delayed to be heard, and that she received a 15-day suspension as a result of her filing dual charges with the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission. Well, she received a 15-day suspension for a very serious incident where someone on her crew was involved in a serious motor vehicle accident on the job, and the division was alerted by someone from the city's prosecutor's office that she had gone to the victim's home with the worker who was involved in the accident in an attempt to convince the victim that her co-worker was not involved in the accident. That was the basis for the discipline. She was lucky, in my opinion, she wasn't terminated over that incident, but there's absolutely no evidence that she received the 15-day suspension retaliation for her filing the EEOC or OCRC charges. With that, Your Honors, if you don't have any further questions for me, I don't think I have anything further. All right. Thank you, Mr. Carson. Thank you.  Thank you, Your Honors. In answer to Judge White's question about whether this was her regular route, it was not. She was given the acting Foreman 1 position in December 2010. The incident happened 11 or so months later, December 2011. She hadn't been trained for it, so it was not her regular route. Again, I submit that infraction is not more serious, more severe than the other individuals involved. With respect to the arbitration decision, the city acknowledges that, and I quote, certain sworn testimony and evidence admitted the arbitration is relevant to this case, and that the relevant evidence includes testimony and exhibits entered in arbitration. Now, I'm not arguing that the arbitration decision is somehow dispositive. Well, you stipulated it's not, right? I stipulated it's not. However, it's interesting that a fact finder... That's not raised collateral estoppel. It's interesting. Well, it's interesting in that... How is that a legal argument? It's a legal argument because we're trying to determine whether there's a genuine issue of material fact, okay? And so if material facts viewed by one fact finder come out one way and they come out another way with another fact finder, that in itself posits a genuine issue of material fact that perhaps a jury might look at one way or the other. So let's find out from the jury. Let's not rely on subjective judgments from the trial court, relying on decisions of a decision maker who may or may not have been discriminatory in his adjudication or in his decision. May not have been discriminatory, but that's the argument we have here is sex discrimination and the federal law standards. The arbitrator looked solely at the contract to determine whether there was a breach of contract by not promoting the more senior employee. And I just see the issues different, that's all. There's obviously a different standard of proof. What aspect are you relying on? Maybe you could just tell us that. The aspect I'm relying on is that we have the same operative facts at the arbitration and in the trial court exercise of motion for summary judgment. And the arbitrator decides the evidence clearly shows the grievant, the appellant, was equally or more qualified than the other applicants for the other form of one position. So appellee wanted to argue that there wasn't any evidence of qualifications, but here's a fact finder who heard evidence and found that she was more qualified. So again, I'm not... The same evidence supports that she was qualified. Absolutely. Absolutely. And thank you very much. Thank you, Mr. Train. Case will be submitted. May call the next case.